2007 UT App 281

**PROSPER, INC., Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SER-VICES, Workforce Appeals Board; and Katrina E. Iversen, Respondents.**

No. 20060734–CA.

Court of Appeals of Utah.

Aug. 23, 2007.

Daniel J. Anderson, Provo, for Petitioner.

Suzan Pixton, Salt Lake City, for Respondent Department of Workforce Services.

Before Judges BILLINGS, McHUGH, and ORME.

## OPINION

ORME, Judge:

¶ 1 Prosper, Inc. petitions for review of the Workforce Appeals Board's decision affirming the award of unemployment benefits to Katrina Iversen. Prosper argues that the Board erroneously applied the "residuum rule" in concluding that Prosper failed to sustain its burden of proof because Prosper relied exclusively on hearsay evidence. We agree with Prosper that the Board misapplied the residuum rule.

## BACKGROUND

¶ 2 Prosper is a Utah company that provides, among other services, long distance financial education services and products, including individual phone sessions with "financial coach[es]." Iversen began working for Prosper as a financial coach in March 2005 and provided one-on-one financial coaching to Prosper "students."[1] Initially, Iversen was allowed to work primarily from home, and she did so from March until September 2005.

¶ 3 On September 9, 2005, Iversen was advised, in writing, that her work performance was unsatisfactory. As part of this Employee Disciplinary Warning, Prosper informed Iversen that she needed improvement in four specific areas. First, she was asked to "[i]mprove[ ] management of [her] students and schedule." Second, she needed to "[r]espond to all student communications within 24 h[ou]rs." Third, "[a]ll coaching [needed] to be done from [the] Prosper coaching office." Fourth, she needed to "[b]egin regular monitoring of other coach's sessions." The written warning also notified Iversen that "[f]ailure to correct the items listed above may result in other disciplinary action up to and including termination." Following a face-to-face meeting with Jason Coulam, Prosper's Executive Vice President for Fulfillment, Iversen signed her acknowledgment of the written warning.

¶ 4 After the written warning was issued, Iversen still occasionally worked from home. Prosper continued to track customer complaints about Iversen through its Customer Management System (CMS). When a customer registered a complaint about Iversen, a Prosper employee would document the complaint by entering it into the CMS. In addition, some customers would directly email their complaints, which were then entered into the CMS. After receiving numerous complaints about Iversen, Prosper made the decision to terminate her, and she was officially terminated in late February 2006.

Prosper maintains that Iversen's continued violation of the performance criteria set forth in the written warning was the reason for her termination.

¶ 5 On February 27, 2006, Iversen filed for unemployment insurance benefits. The initial Workforce Services adjudicator concluded that "[j]ust cause [for termination] is shown and [unemployment] benefits are denied." Iversen appealed the initial decision to a Department of Workforce Services administrative law judge (ALJ). In preparation for the hearing, Tim Peterson, Prosper's Human Resources Manager, created a spreadsheet listing the complaints against Iversen that had been documented in the CMS (the CMS spreadsheet). The CMS spreadsheet was then presented at the hearing as evidence of Iversen's poor performance record, justifying her termination. According to the CMS spreadsheet, complaints about Iversen were received from eleven people between early September 2005 and February 21, 2006. The ALJ received evidence regarding customer complaints registered against Iversen, including the CMS spreadsheet and direct testimony from Prosper employees Jason Coulam, Tim Peterson, and Lorin Hardy.[2] Iversen testified in her own behalf.

¶ 6 The ALJ reversed the initial adjudicator and awarded unemployment benefits, assessing the cost of Iversen's benefits to Prosper. The ALJ reasoned that the direct testimony offered on Prosper's behalf and the CMS spreadsheet all constituted hearsay and, therefore, that Prosper "offered no firsthand evidence or otherwise competent legal evidence to establish that [Iversen] was guilty of the job performance issues alleged against her." As a result, the ALJ concluded that Prosper "has not established a final incident of culpable conduct requiring [Iversen's] termination[,]" and that Iversen was therefore entitled to unemployment benefits.

---

1. Prosper often refers to customers who participate in the telephone coaching services as "students."

2. Prosper now asserts that there was sufficient evidence to support Iversen's termination for the attendance violations presented by her continued

insistence on working from home, but Tim Peterson testified that Prosper would not have fired Iversen just for "telecommuting" and that customer complaints were the main reason for Iversen's discharge. Accordingly, we address only the evidence regarding customer complaints.

¶ 7 On May 9, 2006, Prosper filed an appeal with the Board, *see* Utah Code Ann. § 35A–4–508(4) (2005), which affirmed the ALJ's decision, adopting the ALJ's "reasoning and conclusions of law ... in full." Prosper subsequently filed a request for reconsideration. *See id.* § 63–46b–13(1)(a) (2004). When the Board denied that request, Prosper timely filed a petition for review with this court. *See id.* § 35A–4–508(8) (2005).

## ISSUE AND STANDARD OF REVIEW

¶ 8 Prosper argues that the Board erred in concluding that Prosper only presented hearsay evidence during the hearing and in refusing to premise its findings on what Prosper believes was competent evidence.[3] Under the Utah Administrative Procedures Act (UAPA), this court may grant relief where "a person seeking judicial review has been substantially prejudiced [because] ... the agency has erroneously interpreted or applied the law." *Id.* § 63–46b–16(4)(d) (2004). The determination of whether evidence constitutes hearsay is a question of law that we review for correctness. *See State v. Olsen,* 860 P.2d 332, 335 (Utah 1993).

## ANALYSIS

¶ 9 Generally speaking, an individual is ineligible for unemployment benefits if he or she is discharged for just cause. *See* Utah Code Ann. § 35A–4–405(2)(a) (2005); Utah Admin. Code R994–405–201 (2006). To establish that a discharge was for just cause, an employer must prove three elements: culpability, knowledge, and control on the part of the employee. *See* Utah Admin. Code R994–405–202 (2006). In affirming the ALJ's decision, the Board concluded that Prosper failed to sustain its burden of proof regarding these three elements. More specifically, the Board concluded that Prosper provided "insufficient legally competent evidence" by relying exclusively on hearsay evidence at the hearing. We disagree.

¶ 10 Under UAPA, "[h]earsay evidence is clearly admissible in administrative hearings." *Mayes v. Department of Employment Sec.,* 754 P.2d 989, 992 (Utah Ct. App.1988). *See also* Utah Admin. Code R994–508–109(9) (2006) ("Oral or written evidence of any nature, whether or not conforming to the rules of evidence, may be accepted and will be given its proper weight."). It is also true, however, that "[u]nder the residuum rule, 'findings of fact ... must be supported by a residuum of legal evidence competent in a court of law.'" *Mayes,* 754 P.2d at 992 (quoting *Yacht Club v. Utah Liquor Control Comm'n,* 681 P.2d 1224, 1226 (Utah 1984)).

¶ 11 We recognize that we have sometimes used imprecise language in the past when talking about the residuum rule. Thus, in *Mayes,* we said that "under the residuum rule, 'findings of fact cannot be based *exclusively* on hearsay evidence.'" *Id.* at 992 (emphasis in original) (citation omitted). While it is true that findings of fact must be supported by a residuum of legally competent evidence, and therefore cannot be based solely on inadmissible hearsay, it is equally true that hearsay can constitute legally competent evidence. In *Mayes,* then, we should have clarified that findings of fact "cannot be based exclusively on *inadmissible* hearsay evidence" because admissible hearsay evidence is "evidence competent in a court of law." This point was explicitly made in *Industrial Power Contractors v. Industrial Commission,* 832 P.2d 477 (Utah Ct.App. 1992), where we pointed out that the claimant's medical records, although hearsay, "would have been admissible in a court of law ... as an express exception to the hearsay rule," *id.* at 479, and that "[t]he residuum rule requires that findings be supported by a residuum of legally competent evidence, not that they be supported by 'non-hearsay' evidence," *id.* at 480. "Certain hearsay is admissible in a court of law and is therefore legally competent." *Id. See, e.g.,* Utah R. Evid. 803(1), (2) (providing that present

---

**3.** Prosper also argues that the Board erred by misapplying the business records exception of the hearsay rule, *see* Utah R. Evid. 803(6), to the CMS spreadsheet. We conclude, however, that the direct testimony and the CMS spreadsheet were improperly excluded under rule 801(c), *see id.* 801(c), and therefore reverse on other grounds. Accordingly, it is unnecessary for us to consider whether the CMS spreadsheet constitutes an admissible business record.

sense impressions and excited utterances, while hearsay, "are not excluded by the hearsay rule").

■ ¶ 12 It is also true that statements that appear on the surface to be hearsay sometimes are not. Hearsay evidence is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Utah R. Evid. 801(c). Accordingly, if an out of court statement is offered for some other purpose—e.g., to prove that it was made and not for its truth—it is not hearsay.

■ ¶ 13 At the Board hearing, Prosper provided both testimony from its employees and the CMS spreadsheet as evidence that Iversen continued to be the subject of customer complaints after the written warning was issued, thus providing Prosper with just cause for her termination. This evidence was not hearsay because it was not introduced for the truth of the matter asserted— i.e., that the customer complaints were true—but simply to prove that the complaints had been made. *Cf. Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 346 (1st Cir.) ("We agree that a customer complaint offered to show, for example, that a decision-maker had notice of the complaint, rather than to prove the specific misconduct alleged in the complaint, is not barred by the hearsay rule."), *cert. denied*, 525 U.S. 932, 119

S.Ct. 341, 142 L.Ed.2d 281 (1998). Prosper offered evidence of customer complaints about Iversen not to establish the truth of any particular complaint, but simply to show she was the object of numerous customer complaints and thus an employee who did not perform satisfactorily.[4] Accordingly, the evidence was not hearsay and should have been considered by the Board in making its factual findings regarding whether Prosper met its burden of proof.[5]

¶ 14 We conclude that the Board erred in failing to consider the testimony that complaints were made and the related CMS spreadsheet. Accordingly, we reverse and remand for the entry of new factual findings, which may be based on the non-hearsay evidence offered by Prosper as well as on any other legally competent evidence, including admissible hearsay. Once those findings are made, the Board shall enter an appropriate order in view of those findings.

¶ 15 WE CONCUR: JUDITH M. BILLINGS, Judge and CAROLYN B. McHUGH, Judge.

---

4. One reality of the workplace is that customer satisfaction is largely a subjective matter. If an employer gets repeated complaints that an employee is rude, for instance, the employer may properly terminate the employee, even if in some absolute sense the employee has good manners and merely "appears" rude to customers. That complaints are made is the real problem from the employer's standpoint—not whether the complaints are "true" in the usual sense. *See, e.g., Knezevic v. Hipage Co.*, 981 F.Supp. 393, 395–96 (E.D.N.C.1997) (holding, in the context of pregnancy discrimination case, that numerous customer complaints about employee, along with other less significant problems, constituted "legitimate, non-discriminatory reasons for the employment [termination] decision," and that employee failed to rebut employer's showing even though employee offered comments from her former supervisor to the effect that "she was an exemplary employee").

5. The Board argues that admitting customer complaints as non-hearsay under rule 801(c), *see* Utah R. Evid. 801(c), violates Iversen's due process right to confront witnesses. We have already ruled that if evidence is presented for some purpose other than to prove the truth of the matter asserted, a party is not denied any due process rights when that evidence is admitted. *See In re G.Y.*, 962 P.2d 78, 86 (Utah Ct.App. 1998) ("Because the out-of-court statements were not admitted for the truth of the matter asserted, appellant was not denied any opportunity to confront or cross-examine the declarant."). Moreover, Iversen had the opportunity to confront the witnesses who recounted that complaints were made.