2008 UT App 350

**PROSPER, INC., Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICES, Workforce Appeals Board; and Katrina Iversen, Respondents.**

**No. 20080095–CA.**

Court of Appeals of Utah.

Oct. 2, 2008.

Rehearing Denied Oct. 22, 2008.

Daniel J. Anderson, Provo, for Petitioner.

Suzan Pixton, Salt Lake City, for Respondents.

Before THORNE, Associate Presiding Judge, BILLINGS, and ORME, JJ.

MEMORANDUM DECISION

BILLINGS, Judge:

¶ 1 This is our second review of the Workforce Appeals Board's (the Board) award of unemployment benefits to Katrina Iversen. In the first appeal, we reversed and remanded for the Board to consider customer complaints and then for the entry of new factual findings. *See Prosper v. Department of Workforce Servs. (Prosper I)*, 2007 UT App 281, ¶ 14, 168 P.3d 344.[1] The Board reconsidered the issue and again awarded unemployment benefits to Iversen.

---

**1.** *Prosper I* includes a more detailed description of the facts, *Prosper v. Department of Workforce Servs.*, 2007 UT App 281, ¶¶ 2–7, 168 P.3d 344, which are not relevant here.

¶ 2 Iversen was an employee of Prosper, Inc. (Prosper), a company that provides financial advice to its customers. Prosper fired Iversen after a series of customer complaints that she did not return emails, missed meetings with customers, and did not provide information to customers as needed. Prosper recorded these complaints in a spreadsheet (the Spreadsheet) and offered them as evidence of Iversen's unsatisfactory performance.

¶ 3 In *Prosper I*, we disagreed with the Board that Prosper's Spreadsheet was strictly hearsay. We stated that the Spreadsheet was not offered for the truth of the matter asserted, but only to show that Iversen had received many complaints and was therefore not performing satisfactorily. We instructed the Board to enter new factual findings, which were to be "based on the non-hearsay evidence offered by Prosper as well as on any other legally competent evidence, including admissible hearsay." *Id.*

¶ 4 On remand, the Board explained that Iversen rebutted the complaints by denying them or providing valid explanations. The Board concluded that the Spreadsheet was not, by itself, sufficiently reliable to prove that Iversen's performance was unsatisfactory. Rather, it merely showed that customers made complaints. The Board also determined that, despite being given the opportunity, Prosper did not corroborate the Spreadsheet evidence with anything more reliable. Prosper again appeals.

¶ 5 The Board complied with our direction on remand and considered the Spreadsheet. However, the Board was not persuaded; it accepted Iversen's explanations for many of the complaints and emphasized that Prosper offered no evidence other than the Spreadsheet to support its assertion that Iversen failed to respond to emails, missed customer meetings, or did not provide information for her customers.

¶ 6 The Board's recitation of Iversen's rebuttals included:

In one case the parties agreed the customer complained because no initial appointment had been scheduled with [Iversen]. The parties also agreed that it was not [Iversen]'s responsibility to schedule the initial appointment. [Iversen] testified that three of the complaints came from customers who had been transferred to her from other coaches. [Iversen] believed some of the discontent of these customers was as a result of their experience with the prior coach and not [Iversen]. One customer allegedly complained about [Iversen] *and* the management of [Prosper]. . . . [Iversen] also explained that her email address contains her last name which ends in "sen." She testified [Prosper] often gave customers the wrong email address spelling her last name as Iverson instead of Iversen. This resulted in the email being undeliverable. If a customer sent an email to [Iversen] at the address provided by [Prosper], [Iversen] did not receive the email and was therefore unable to answer it. [Iversen] testified this led to problems with some of her customers. Some complaints [Iversen] did not remember.

[Iversen] also testified that these customers paid $10,000 for the coaching sessions and sometimes decided they had "buyer's remorse." These customers, [Iversen] explained, would say anything to get their money back including blaming it on services performed, or not performed. . . . [Iversen] testified she had 45 to 50 customers at a time and was supposed to provide a 45 minute coaching session for each customer each week. [Iversen] testified this led to overbooking of appointments which was especially difficult if a customer missed or needed to reschedule an appointment. [Iversen] testified she did not schedule her own appointments as scheduling was done by other employees. She also testified the product was "oversold," with salespersons telling customers they would receive more time and attention from the coach than was possible with 45 to 50 customers. [Prosper] did not rebut these allegations.

[Because Iversen had more customers than other coaches], it should be expected she had more … customer complaints. The employer did not present any evidence about the number of complaints or customers of its other, similarly situated employees.

¶ 7 After hearing Iversen's responses to the customer complaints, and having no evidence from Prosper that would corroborate the complaints, the Board concluded that the Spreadsheet did not "prove [Iversen] did the things the customers claimed she did." Accepting that complaints were made, the Board concluded that Prosper had not shown that Iversen performed any "deliberate, willful, or wanton" act that would disqualify her from receiving unemployment benefits, as required by the Utah Administrative Code rule R994–405–201, *see* Utah Admin. Code R994–405–201. The Board summarized its position by stating "[w]hether the employer made a good business decision to discharge the claimant based on customer complaints is not the issue to be decided here. The issue is whether there is sufficient proof that the claimant was at fault in the discharge."

In light of the Board's careful review of the evidence, and its ensuing credibility determinations and explanation, we cannot conclude that it abused its discretion in awarding unemployment benefits to Iversen. Accordingly, we decline to disturb the Board's decision.

¶ 8 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and GREGORY K. ORME, Judge.