**2018 UT App 174**

## THE UTAH COURT OF APPEALS

KYCO SERVICES LLC,
Petitioner,

*v.*

DEPARTMENT OF WORKFORCE SERVICES,
Respondent.

Opinion
No. 20170273-CA
Filed September 7, 2018

Original Proceeding in this Court

Kendra Shirey, Chrystal Mancuso-Smith, and Robert
E. Aycock, Attorneys for Petitioner

Nathan R. White, Attorney for Respondent

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

HARRIS, Judge:

¶1     As a general rule, employers must make unemployment insurance contributions for workers they employ. The Department of Workforce Services Board of Appeals (Board) determined that, for certain workers during certain pay periods, Kyco Services, LLC (Kyco) had failed to do so. Kyco seeks review of that determination in this court, and asserts that the workers in question were not its employees but, instead, were employed by a second company that it claims sometimes supplied Kyco with extra laborers for certain jobs. Because the evidence was sufficient to support the Board's determination that Kyco employed the workers, we decline to disturb it.

BACKGROUND

¶2      Kyco is a limited liability company that provides drywall services on construction projects. For larger jobs, Kyco would occasionally need additional workers, and on some of these occasions would utilize contract laborers provided by a separate company. As relevant here, in 2010 Kyco contracted with ITY, LLC (ITY1), apparently for the purpose of obtaining contract laborers as needed. At the time, ITY1 had a valid subcontractor's license, but that license expired in 2011 and was not renewed, prompting Kyco to eventually stop working with ITY1.

¶3      In December 2011, the owner of ITY1 created a new company called ITY of Texas, LLC (ITY2), and at some point thereafter, apparently in 2012, Kyco entered into a written "subcontract agreement" with this new entity. That agreement stated that ITY2 would provide workers to Kyco, provide supervision for those workers, maintain worker's compensation insurance, pay payroll taxes, and hold a valid subcontractor's license. ITY2 never obtained such a license, however, and the working relationship that actually developed between Kyco and ITY2 deviated substantially from the terms of their agreement.

¶4      In 2015, a representative of the Department of Workforce Services (Department) audited Kyco and determined that ITY2 had not actually provided and supervised laborers for Kyco, but instead had merely served as a "bookkeeping company" that arranged for payment of workers that Kyco hired and supervised. Under the Utah Administrative Code, an employer must report an employee on its payroll tax reports if the employer: (1) has the right to hire and fire the employee, (2) has the responsibility to control and direct the employee, and (3) is the employer for whom the employee performs a service. Utah Admin. Code R994-202-104(1). "Payrolling" is "the practice of [a company] paying wages to the employees of another employer or reporting those wages on its payroll tax reports." *Id*.

Payrolling is not permitted under Utah law. *Id*. R994-202-104(2). The auditor determined that certain laborers who had been paid by ITY2 during various pay periods in 2014 and 2015 were actually employed by Kyco, and that Kyco should have been making unemployment insurance contributions for these laborers. Accordingly, the auditor recommended that Kyco be ordered to pay those contributions, plus interest and penalties. Kyco requested that a "hearings officer" review the auditor's determination.

¶5    After review, the hearings officer acknowledged that "[Kyco] signed a subcontractor agreement with [ITY2]" stating that ITY2 would "provide individuals to install drywall . . . at [Kyco's] worksites," but noted that the auditor had "found a different working relationship between [Kyco] and [ITY2] than . . . implied in the agreement." The officer stated that the auditor had based that conclusion on discussions with the owner of ITY2 (Owner), who had "revealed" that ITY2 "was acting as a payroll service" and that Kyco, not ITY2, employed the workers paid by ITY2. The hearings officer affirmed the auditor's determination, and Kyco sought further administrative review.

¶6    Thereafter, Kyco received a notice from the Department that its appeal had been set for a telephonic hearing before an administrative law judge (ALJ). This notice warned Kyco that one of the issues to be heard during the hearing would be the issue of "payrolling," and that the hearing would be Kyco's opportunity to "present ALL testimony and evidence on the issues." The notice stated that "[t]he appeal decision will be based solely on the evidence and testimony presented at the hearing," and that if a further appeal of the ALJ's decision was filed, Kyco would "generally not be allowed to present new or additional testimony and evidence." The notice also advised Kyco that, while hearsay testimony would be admissible at the telephonic hearing, direct witness testimony would be more helpful than hearsay testimony in proving factual assertions.

¶7    The hearing took place in April 2016. At the hearing, Kyco presented testimony from its owner, Kyle Morris, who testified about several topics, such as the details of Kyco's working relationship with ITY1 prior to the formation of ITY2. However, Kyle Morris stated that he did not deal directly with ITY2, and that he had very few recent contacts with Owner and did not know how ITY2's business was structured. Kyco did not present testimony from any other witnesses.

¶8    In response, the Department presented testimony from Owner, who testified that, while the contract signed by the parties stated that ITY2 would provide supervised workers to Kyco for construction projects, their actual agreement and subsequent working relationship was significantly different in practice. Indeed, Owner stated that, around the time that the parties entered into the signed agreement, Kyco's Rob Morris—Kyle Morris's brother—informed Owner that ITY2 would instead handle payrolling for Kyco. Owner testified that, for the entirety of their professional relationship, the only work ITY2 performed for Kyco was issuing checks to employees that Kyco hired and supervised based on lists of employee names and payment amounts that Kyco provided. Owner further testified that ITY2 was never involved in any labor on Kyco's behalf, and that he had never worked with drywall and would not know how to perform such work.

¶9    In response, Kyco solicited additional testimony from Kyle Morris, who reiterated that he had very few conversations with Owner, and confirmed that it was Rob Morris—rather than himself—who "made the arrangements" regarding Kyco's relationship with ITY2. While Kyle Morris acknowledged that he did not have direct knowledge of Rob Morris's interactions with Owner or of the actual working relationship that developed between Kyco and ITY2, he indicated that he felt strongly that, if asked, Rob Morris would deny that Kyco and ITY2 were in a payrolling relationship. Kyle Morris further stated that Rob

Morris "would have asked me first" before agreeing to enter into a payrolling relationship with ITY2, and that he had no reason to believe Rob had entered into such a relationship.

¶10   The ALJ credited Owner's testimony over Kyle Morris's testimony. In a formal written decision, the ALJ found that Owner was "the only individual who provided firsthand testimony about the arrangements made" between Kyco and ITY2. Accordingly, despite the written agreement's language classifying ITY2 as a subcontractor, the ALJ found that the workers ITY2 paid were hired by Kyco, controlled and directed by Kyco, and performed services for Kyco. The ALJ further noted that, "[e]ven if . . . [Owner] signed an agreement to be a construction subcontractor, he could not legally do so" because he did not have a license. Accordingly, the ALJ concluded that, regardless of the terms of the written agreement, Kyco employed the workers paid by ITY2 and was therefore liable for the unemployment insurance contributions associated with their employment.

¶11   Kyco appealed the ALJ's determination to the Board. As part of that appeal, Kyco sought for the first time to introduce a declaration from Rob Morris calling Owner's testimony into question. However, the Board declined to consider this evidence because it had not been presented during the hearing before the ALJ and because, per Utah law, "[a]bsent a showing of unusual or extraordinary circumstances, the Board will not consider new evidence on appeal if the evidence was reasonably available and accessible at the time of the hearing before the ALJ." *See* Utah Admin. Code R994-508-305(2).

¶12   Kyco also attempted to persuade the Board to afford greater weight to Kyle Morris's testimony, arguing that he was a "corporate representative" offering testimony on behalf of Kyco, as opposed to offering testimony simply on his own behalf. The Board determined that, while there are rules to designate

corporate representatives for depositions in civil cases, there are no such rules applicable to administrative hearings. Accordingly, the Board determined that Kyle Morris's testimony regarding subjects of which he did not have firsthand knowledge (such as Rob Morris's activities, or the actual working arrangement between Kyco and ITY2) was hearsay. The Board therefore declined to afford more weight to Kyle Morris's testimony than the ALJ had. Further, the Board noted that, "even if the entirety of [Kyle] Morris's testimony were to be considered, the ultimate outcome would not change" because Kyle Morris did not fully contradict Owner's testimony regarding the day-to-day relationship between Kyco and ITY2.

¶13 Accordingly, the Board affirmed the ALJ's determination.

ISSUES AND STANDARDS OF REVIEW

¶14 Kyco now seeks review of the Board's decision in this court, and asks us to consider four issues. First, Kyco contends that much of Owner's testimony was barred by the parol evidence rule, and that the Board erred by considering that testimony. Whether the parol evidence rule bars particular evidence is a question of law, and we review for correctness the Board's decision to entertain the challenged evidence. *See Bennet v. Huish*, 2007 UT App 19, ¶ 8, 155 P.3d 917.

¶15 Second, Kyco asserts that the Board erred by determining that Kyle Morris was not a designated corporate representative of Kyco, and therefore concluding that his testimony that was not based on firsthand information was hearsay. Under the Utah Administrative Procedures Act, we may grant relief where "a person seeking judicial review has been substantially prejudiced [because] . . . the agency has erroneously interpreted or applied the law." Utah Code Ann. § 63G-4-403(4)(d) (LexisNexis 2016). Further, whether evidence proffered at an administrative hearing constitutes hearsay is a question of law that we review

for correctness. *Prosper, Inc. v. Department of Workforce Services*, 2007 UT App 281, ¶ 8, 168 P.3d 344.

¶16    Third, Kyco contends that the Board erred when it refused to consider Rob Morris's declaration. We review an agency's decision to exclude evidence for abuse of discretion. Utah Code Ann. § 63G-4-403(4)(h).

¶17    Fourth, Kyco contends that the Board erred when it found that Kyco employed the workers paid by ITY2. On review, we decline to disturb an agency's findings of fact "if they are supported by substantial evidence when viewed in light of the whole record before the court." *Gibson v. Department of Workforce Services*, 2017 UT App 107, ¶ 2, 400 P.3d 1152 (quotation simplified). "Substantial evidence is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion and is more than a mere scintilla but [is] something less than the weight of the evidence." *Needle, Inc. v. Department of Workforce Services*, 2016 UT App 85, ¶ 6, 372 P.3d 696 (quotation simplified). Further, due to the fact-intensive nature of employment status inquiries, we defer to the Board's conclusions regarding employment status "if they are supported by the record evidence." *Evolocity, Inc. v. Department of Workforce Services*, 2015 UT App 61, ¶ 6, 347 P.3d 406.[1]

---

1. Kyco also contends that the Board erred in failing to address whether the workers paid by ITY2 were independent contractors as opposed to Kyco's employees. This argument is unavailing, because the Board determined, during its review of the "payrolling" regulation, that Kyco was responsible for controlling and directing the workers in question. *See* Utah Admin. Code R994-202-104(1)(b). Under a separate regulation, a worker is an employee, and not an independent contractor, if the putative employer exercises "control and direction" over the

(continued…)

ANALYSIS

A

¶18   Kyco first contends that much of Owner's testimony was barred by the parol evidence rule, and that the Board erred by considering that testimony. We find this argument unpersuasive, because the parol evidence rule does not apply to bar Owner's testimony regarding the contracting parties' actual post-agreement relationship.

¶19   The parol evidence rule "operates, in the absence of fraud or other invalidating causes, to exclude evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an integrated contract." *See Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 11, 182 P.3d 326 (quotation simplified). "Thus, if a contract is integrated, parol evidence is admissible only to clarify ambiguous terms," and is "not admissible to vary or contradict the clear and unambiguous terms of the contract." *Id.* (quotation simplified); *see also Boud v. SDNCO, Inc.*, 2002 UT 83, ¶ 20, 54 P.3d 1131 (stating that the parol evidence rule "precludes a search for additional or contradictory terms outside the four corners of [the agreement] absent some proof of fraud or mistake").

---

(…continued)
worker. *See id.* R994-204-303(2). Thus, the Board's determination that Kyco exercised control and direction over the workers is also dispositive of Kyco's independent contractor argument. Indeed, the Board expressly stated in its opinion that "the individuals paid through [ITY2] are employees [of Kyco] and not independent contractors." Thus, the Board did not fail to address the issue and, for the reasons discussed elsewhere herein, its decision on the issue was sound.

¶20   In this case, Kyco asserts that the agreement it entered with ITY2 was complete and unambiguous, and further argues that at least part of Owner's testimony—that "the 'real' agreement between the parties was for payroll services"—was offered for the purpose of varying or adding to the terms of the agreement. Accordingly, Kyco argues that the Board should have applied the parol evidence rule to bar Owner's testimony.

¶21   We disagree. While the parol evidence rule prohibits the admission of evidence offered to vary or add to the terms of an agreement, the rule applies only where the meaning of that agreement is at issue. *See State v. Laine*, 618 P.2d 33, 34–35 (Utah 1980) (stating that "the parol evidence rule cannot properly be invoked to prevent the State from showing the facts relating to" whether the defendant committed a crime, because the State was "not a party to" the contract in question and was therefore "neither bound by [its] terms" nor "prohibited from" discussing it during the trial); *Garrett v. Ellison*, 72 P.2d 449, 451–52 (Utah 1937) (stating that parol evidence is inadmissible "in an action founded upon such writing, between the parties or privies thereto," and that the parol evidence rule "applies only in controversies between the parties" to the contract (quotation simplified)). In this administrative proceeding (as opposed to a potential lawsuit by Kyco against ITY2 for breach of contract), the terms of the parties' 2012 agreement are of only tangential relevance. Indeed, as a general matter, administrative agencies are concerned with whether parties violated the law during particular intervals of time. In this case, while Owner testified briefly about the terms of the written agreement between Kyco and ITY2, the terms of that agreement were merely background information underlying the real issue: whether the workers being paid by ITY2 were in fact employees of Kyco during the specific 2014 and 2015 pay periods for which Kyco was audited, such that Kyco should be liable for any taxes or payments associated with those workers' wages. While the terms of an agreement between two parties may certainly bear some

relevance to what is actually happening in practice, the focus of the inquiry is not on the meaning of the language of any existing agreement but rather on the actual relationship itself.

¶22　Moreover, the parol evidence rule does not prohibit a court from considering events that occurred *after* the formation of a contract, including any subsequent arrangements that may have been made by the parties. *Mardesich v. Sun Hill Homes LC*, 2017 UT App 33, ¶ 15 n.3, 392 P.3d 950 ("[T]he parol evidence rule only purports to foreclose events which precede or accompany a written or oral [agreement], not those which come later." (quotation simplified)). "Because a subsequent mutual agreement is not a contemporaneous or prior conversation, representation, or statement, it is not parol evidence" with respect to an earlier contract. *Id*. (quotation simplified).

¶23　Here, Owner testified that his company paid employees who were hired and supervised by Kyco. This testimony was not offered to vary or add to the terms of the agreement between Kyco and ITY2, but rather to establish that the workers in question were, in fact, Kyco's employees during the relevant pay periods. Similarly, the Board's conclusion that Kyco and ITY2 were engaged in a payrolling relationship was not based on a determination that the terms of the parties' 2012 agreement included payrolling arrangements, but rather on the conclusion that payrolling occurred in 2014 and 2015 regardless of what the agreement said. Accordingly, Owner's testimony to that effect was not barred by the parol evidence rule, and the Board did not err in considering it.

B

¶24　Kyco next contends that the Board erred when it declined to deem Kyle Morris to be Kyco's "corporate representative," and therefore determined that his testimony on subjects of which

he did not have firsthand knowledge was hearsay.[2] In making this contention, Kyco asserts that Kyle Morris "testified at the hearing as the representative for Kyco" and that, because "[a] corporation is a fictitious entity" that "can only testify through its designated representative," Kyle Morris's testimony as to the working relationship between Kyco and ITY2 should not have been considered hearsay despite his lack of personal knowledge.

¶25    In its briefing on appeal, Kyco cites to no Utah statute or case law in support of its position. However, at oral argument and in the record below, Kyco analogized to rule 30(b)(6) of the Utah Rule of Civil Procedure, which provides that in civil cases, for purposes of pretrial depositions, "[a] party may name . . . a corporation" as a witness and that, if a party does so, the corporation may "designate one or more officers, directors, managing agents, or other persons to testify on its behalf." If a corporate representative is designated in this manner, the party calling the corporation as a witness must "describe with

---

2. Hearsay evidence is "clearly admissible in administrative hearings," *see Deseret Book Co. v. Department of Workforce Services*, 2018 UT App 50, ¶ 8 n.1, 430 P.3d 109 (quotation simplified), and neither party contends here that the Board should have excluded Kyle Morris's hearsay testimony entirely. However, all factual findings made in administrative hearings "must be supported by a residuum of legal evidence competent in a court of law." *Id.* (quotation simplified). Because of its determination that some of Kyle Morris's testimony was hearsay, the Board appears to have afforded less weight to that testimony than it did to Owner's firsthand testimony. On appeal, Kyco does not challenge the principle that hearsay testimony should generally be afforded less weight than firsthand testimony, and does not challenge the Board's specific decision—made following its determination that Kyle Morris's testimony constituted hearsay—to afford less weight to that testimony because it was hearsay.

reasonable particularity the matters on which" the witness is expected to testify, and the corporation must "state, for each person designated, the matters on which the person will testify." *Id*. If these guidelines are followed, the corporate representative is entitled to testify "as to matters known or reasonably available to the organization," and is not limited to testifying solely about those matters of which the corporate representative has personal knowledge. *Id*. Kyco argues that it intended to designate Kyle Morris as a form of corporate representative akin to those designated in civil depositions pursuant to rule 30(b)(6), and that therefore his testimony that his brother would not have engaged in a payrolling-type relationship with ITY2 was not hearsay.

¶26     We disagree for several reasons. First, even assuming, without deciding, that rule 30(b)(6) could potentially apply in the context of this administrative proceeding,[3] that rule applies by its terms only to discovery depositions, and not to trials or

---

3. The Board determined that "the Rules of Civil Procedure do not generally apply" in administrative hearings before an ALJ. While Utah Code section 63G-4-205(1) (LexisNexis 2016) provides that parties to an administrative proceeding "may conduct discovery according to the Utah Rules of Civil Procedure" if "the agency does not enact [other] rules," the Department of Workforce Services *has* enacted rules for appeals from "initial Department determination[s] on unemployment benefits or unemployment tax liability (contributions)." Utah Admin. Code R994-508-101(1). Those rules specifically provide that, in this context, formal discovery governed by the Utah Rules of Civil Procedure is "rarely necessary and tend[s] to increase costs while delaying decisions." *Id*. R994-508-108(2)–(3). Accordingly, formal discovery is only allowed in these proceedings "if so directed by the ALJ" and if certain elements are found to be present. *Id*. The ALJ gave no such direction and made no such findings in this case.

evidentiary hearings. *See, e.g., Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 908 (5th Cir. 2010) (stating that, while rule 30(b)(6) "allows corporate representatives to testify to matters within the corporation's knowledge during deposition," that rule does not apply to trials, and holding that "a corporate representative may not testify [at trial] to matters outside his own personal knowledge to the extent that information is hearsay not falling within one of the authorized exceptions" (quotation simplified)); *In re Otero County Hosp. Ass'n*, No. 11-11-13686 JL, 2014 WL 184984, *10 (Bankr. D.N.M. Jan. 15, 2014) (stating that rule 30(b)(6) "applies to *deposition* testimony, not trial testimony"). Indeed, rule 30 appears in the section of the Utah Rules of Civil Procedure governing "depositions and discovery," and is itself titled "Depositions upon oral questions." *See* Utah R. Civ. P. 30. Subsection (b) of that rule concerns itself with the form of "[n]otice[s] of deposition." *Id.* R. 30(b). Kyco cites no authority for the proposition that rule 30(b)(6) has any application outside the context of pretrial depositions in civil cases. And the hearing before the ALJ was no pretrial deposition—it was a contested, adversarial hearing presided over by a neutral arbiter.

¶27 Second, again assuming, without deciding, that rule 30(b)(6) could potentially apply here, Kyco made no effort to comply with its requirements. Rule 30(b)(6) states that, if a party calls a corporation as a witness, the corporation shall designate a corporate representative to speak on its behalf, and shall "describe with reasonable particularity the matters on which" the corporate designee is expected to testify. The corporation must also "state, for each person designated, the matters on which the person will testify." In this case, neither side called Kyco as a corporate witness. Further, Kyco did not, prior to Kyle Morris's testimony, "describe with reasonable particularity the matters on which" he was expected to testify or set forth the matters on which he would testify. Accordingly, even if rule 30(b)(6) were applicable, Kyco failed to comply with its terms.

¶28    Third, we credit the Board's determination that, "even if the entirety of [Kyle] Morris's testimony were to be considered [as firsthand testimony rather than hearsay], the ultimate outcome" of this case would not change because Kyle Morris did not fully contradict Owner's testimony regarding to the day-to-day relationship between Kyco and ITY2. Kyle Morris testified only that he did not believe Rob Morris would have entered into the sort of agreement with ITY2 that Owner alleged, and that he believed Rob Morris would have denied entering into that sort of agreement. He did not contradict Owner's testimony that, regardless of whatever written agreement existed between Kyco and ITY2, the day-to-day practice between Kyco and ITY2 amounted to a payrolling relationship. Accordingly, even had Kyle Morris been a corporate representative similar to that envisioned under rule 30(b)(6), his testimony would not have been sufficient to contradict the bulk of Owner's testimony, or undermine the Board's ultimate conclusion.

¶29    Accordingly, the Board did not err when it determined that Kyle Morris was not a corporate representative, and that his testimony on subjects of which he did not have firsthand knowledge was hearsay.

C

¶30    Kyco next contends that the Board erred when it refused to consider the declaration of Rob Morris. As noted, Rob Morris did not testify at the hearing, and Kyco made no effort to introduce his declaration before the ALJ. Kyco's first attempt to introduce that declaration into these proceedings was during its appeal to the Board. We conclude that the Board did not abuse its discretion by refusing to consider Rob Morris's declaration.

¶31    Under the Utah Administrative Code, an ALJ's decision "will be based solely on the testimony and evidence presented at the [administrative] hearing." Utah Admin. Code R994-508-109(4). Further, "[a]bsent a showing of unusual or extraordinary

circumstances, the Board will not consider new evidence on appeal if the evidence was reasonably available and accessible at the time of the hearing before the ALJ." *Id*. R994-508-305(2). Here, Kyco argues that the Board should have accepted Rob Morris's declaration because "unusual and extraordinary circumstances exist[ed]" in that "[Kyco] had no way to predict or anticipate" that, at the hearing, Owner would contradict the terms of the written agreement between Kyco and ITY2.

¶32     However, this assertion is belied by the particulars of the hearings officer's decision, which was issued almost two months before the ALJ hearing and was the decision that Kyco appealed to the ALJ. In this decision, the hearings officer affirmed the field auditor's determination that Kyco had engaged in payrolling, and explicitly stated that this determination had been based on "[c]onversations between the [a]uditor and [Owner]" which "revealed [that ITY2] was acting as a payroll service" for Kyco. The decision went on to describe an alleged business relationship between ITY2 and Kyco that differed significantly from the terms set forth in the written agreement. Moreover, after appealing the officer's decision, Kyco received a notice prior to the hearing before the ALJ, which specifically informed Kyco that the subject of "payrolling" would be at issue during the hearing. Because Kyco received specific notice that Owner had already testified that the agreement between Kyco and ITY2 was different in practice than it was on paper, it should have been entirely foreseeable to Kyco that the Department might present testimony from Owner reiterating that same point.

¶33     Kyco therefore received adequate notice that it would need to be ready to present all of the evidence (including witness testimony) relevant to its position on the subject of payrolling (and more broadly, the subject of whether Kyco employed the workers paid by ITY2) at the administrative hearing before the ALJ. Kyco has not asserted that Rob Morris was unavailable to testify at the hearing, and has not adequately explained why it

would not have been on notice that Rob Morris's testimony might be relevant to the issues underlying the field auditor's conclusions. Accordingly, the Board did not abuse its discretion when it determined that "unusual and extraordinary circumstances" were not present, and therefore refused to consider Rob Morris's declaration.

D

¶34 Finally, Kyco contends that the Board's determination that Kyco employed the workers in question was "clearly erroneous." However, Kyco does not identify any specific factual findings that it asserts are unsupported by substantial evidence. Similarly, Kyco does not identify any of the Board's conclusions that it asserts are unsupported by record evidence. Instead, Kyco's argument on this point is advanced on two fronts: (1) Kyco's reiteration of its arguments that Owner's testimony should have been excluded, Kyle Morris's testimony should not have been considered hearsay, and Rob Morris's testimony should have been admitted; and (2) Kyco's assertions that the Board could have made different factual findings and come to different legal conclusions based on the evidence.

¶35 As to the first argument, we have already determined that the Board did not err in considering Owner's testimony about the mechanics of the day-to-day relationship between Kyco and ITY2, determining that Kyle Morris's testimony regarding Kyco's working relationship with ITY2 was hearsay, and excluding Rob Morris's declaration. As to the second argument, we note that our role as an appellate court is not to reweigh the evidence presented before the Board and determine whether we would have come to a different conclusion, or even whether a different conclusion would have been plausible given the record evidence. *See Syed v. Department of Workforce Services*, 2012 UT App 266, ¶ 3, 286 P.3d 1291 (per curiam) (stating that "appellate courts will not reassess an agency's credibility determinations or

reweigh the evidence in a proceeding where conflicting evidence is presented"). Rather, our role is to determine whether the Board's factual findings were based on substantial evidence. On this record, we conclude that the Board's findings were supported by substantial evidence. Accordingly, we perceive no reason to disturb the Board's determination that Kyco employed the workers in question during the relevant time period.

CONCLUSION

¶36    Owner's testimony about the day-to-day relationship between Kyco and ITY2 was not barred by the parol evidence rule, and the Board therefore did not err by considering it. The Board did not err by determining that Kyle Morris's testimony on issues of which he had no personal knowledge was hearsay. The Board did not abuse its discretion by refusing to consider Rob Morris's declaration. In light of these rulings, it follows that there was substantial evidence to support the Board's determinations, and we therefore decline to disturb them.

———————